JOHN M. and CATHY KAMMEYER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kammeyer v. Commissioner
Docket No. 22136-88
United States Tax Court
T.C. Memo 1991-261; 1991 Tax Ct. Memo LEXIS 309; 61 T.C.M. (CCH) 2851; T.C.M. (RIA) 91261; June 10, 1991, Filed *309 Decision will be entered for the respondent. George P. Kelesis, for the petitioners. David W. Sorensen, for the respondent. GALLOWAY, Special Trial Judge. GALLOWAY
MEMORANDUM OPINION This case was heard pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. [1]
By notice of deficiency dated July 7, 1988, respondent determined deficiencies in petitioners' 1983 and 1984 Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661 1983
$ 5,536.00
$ 277.00
*
$ 1,273.00
1984
3,470.00
174.00
*
*310 The issues for decision are: (1) Whether petitioners underreported toke income on their 1983 and 1984 joint tax returns; and (2) whether petitioners are liable for additions to tax as determined by respondent. This case was one of a group of assigned cases called at a special trial session of the Court held at Las Vegas, Nevada. The cases contain common questions of fact or law and are among the remaining unresolved cases which arose from a toke compliance program initiated by respondent in Nevada in 1982. (An explanation of respondent's toke compliance program is found in , T.C.M. (RIA) 90168). Some of the facts have been stipulated and are so found. The stipulation and attached exhibits are incorporated herein by reference. Petitioners were residents of Las Vegas, Nevada, when the petition was filed in this case. 1. Underreported Toke Income
During 1983 and 1984, John M. Kammeyer (petitioner) was employed as a craps dealer on the swing shift at the MGM Grand Hotel and Casino (MGM) in Las Vegas, Nevada. Petitioner was paid by MGM for 1,730 hours of work *311 in 1983 and 1,371 hours of work in 1984. MGM craps dealers normally worked eight-hour shifts during the years involved. In addition to his salary paid by MGM, petitioner received tips (tokes) from the players at the craps tables. "Tokes" are casino chips (house checks) that players either give to the dealers directly or place along with their own bets as bets for the dealers. See , affd. without published opinion . The tokes were received by petitioner while on duty at the tables, either directly from the players or through a "separate bet" made for him (as the dealer) by a player. Any "separate bet" was at all times under the control of the participating player. If such "separate bet" resulted in a win, the player had the right to keep such winnings for himself rather than give them to the dealer. Winnings from a "separate bet" belonged to the player until he actually gave such winnings to the dealer. The Nevada Gaming Commission considered a "separate bet" placed by a player at a craps table for the dealer as one made between the player and the casino. Craps *312 dealers are not allowed to gamble or place bets at their tables. Under house rules at MGM, a craps dealer is not allowed to advise the player how a hand should be played or how a bet should be made. During 1983 and 1984, MGM operated between five and ten craps tables during the swing shift on weeknights and nine to ten on the weekends. Between three and ten craps tables (an average of five) were operated for the day shift during this time. The day shift was lighter than the swing shift as there were fewer gamblers in the casino and fewer craps tables were operated. Each craps table at MGM was operated by a crew made up of four dealers -- three active dealers (the stickman, second base, and third base) who worked the table at all times and one dealer who was on break. The stickman received the tokes and generally put them in his shirt pocket. Each man had the stick for 20 minutes. At the end of the 20-minute period, the tokes were pooled by placing said tokes into the toke box under the craps table. The total amount so pooled was divided equally by the four craps dealers working a table during any given shift. On their 1983 tax return, petitioner and Mrs. Kammeyer reported *313 as wages her income as a bank manager of $ 33,800 and petitioner's wages from MGM totaling $ 18,521, of which $ 10,451 represented toke income. On their 1984 tax return, petitioner and Mrs. Kammeyer reported as wages her income as a bank manager of $ 35,880 and petitioner's wages from MGM totaling $ 13,913, of which $ 7,886 represented toke income. Petitioner participated in the toke compliance program during 1983 and 1984 and submitted monthly calendars (or diaries) to respondent reflecting his daily toke income. He reported his tokes in his calendar either the day he received them or two to three days later. Petitioner's records reflected an average hourly toke rate of $ 6.04 for 1983 and $ 5.75 for 1984, respectively. Under the toke compliance program, respondent received several diaries from day shift craps dealers, swing shift craps dealers (including petitioner), and graveyard shift craps dealers. Respondent's witness, an appeals officer, testified that respondent determined the average hourly toke rate reflected in petitioner's calendars was too low after respondent had reviewed all of the diaries and conducted comparative analyses. Respondent decided to calculate petitioner's *314 reportable toke income by using the hourly toke rate determined from the calendars of respondent's witness Harold Cyr, a day shift craps dealer at MGM. Mr. Cyr's calendars reflected an average hourly toke rate of $ 14.17 for 1983 and $ 13.44 for 1984. By comparing this hourly toke rate to the toke income reported by petitioner in 1983 and 1984, respondent determined that petitioner underreported his toke income for both years. Respondent reconstructed petitioner's toke income using the average hourly toke rate computed for Mr. Cyr for both 1983 and 1984, and multiplying it by the number of hours worked by petitioner during each year. Accordingly, respondent determined that petitioner and Mrs. Kammeyer had underreported petitioner's toke income by $ 14,063 for taxable year 1983 and by $ 9,804 for taxable year 1984. It is well established that tokes constitute compensation for services rendered and are includable in gross income under section 61. , affd. without published opinion sub nom. . Taxpayers are required to maintain sufficient records *315 to establish their correct tax liability. Section 6001. If a taxpayer fails to keep the required records or the records maintained do not clearly reflect income, respondent is authorized by section 446 to compute income in accordance with such method as in his opinion clearly reflects the full amount of income received. . Respondent has great latitude in adopting a method for reconstructing income. . The reconstruction need only be reasonable in light of all the surrounding circumstances. . Respondent's determinations are presumed correct and the burden is on petitioners to show otherwise. ; Rule 142(a). Reconstruction of income through the use of toke records of other dealers in the same game and casino is an allowed method to compute income where it is clear that petitioner did not maintain accurate records. In , *316 we held that respondent's use of diaries maintained by employees was reasonable. The Ninth Circuit, to which this case would be appealable, has affirmed our decision approving the use of a twenty-one dealer's diary to establish the rate for fellow twenty-one dealers. , affg. a Memorandum Opinion of this Court. Petitioner contends that he kept an accurate diary of his toke income during the years involved. He further contends that respondent's use of Mr. Cyr's diary to reconstruct his toke income was unreasonable because Mr. Cyr worked a different shift, different days, and a different table. With regard to petitioner's contention, we note that respondent's reconstruction need only be reasonable in light of all surrounding circumstances. ; Furthermore, the record discloses that the swing shift was more active than the day shift during 1983 and 1984. There were more craps tables open and more gamblers in the casino during the swing shift. As a result, petitioner should have earned as much or more *317 in tips than the day shift dealer, Mr. Cyr. However, the tips reported in petitioner's tip diaries were approximately 2-1/2 times less than the tips reported in Mr. Cyr's diaries in the years in issue. Petitioner offered no reasonable explanation for the substantial discrepancies in tokes allegedly earned by him as compared to Mr. Cyr's earnings. After a review of both petitioner's and Mr. Cyr's calendars, with special emphasis on weekend days and holidays on which both were on duty, we find that respondent's use of Mr. Cyr's hourly tip rate for 1983 and 1984 in reconstructing petitioner's toke income is reasonable and produces a substantially correct result. Accordingly, we affirm respondent's determination of petitioner's understatement of tips reported on his joint 1983 and 1984 Federal income tax returns. 2. Additions to Tax
a. Section 6653(a)(1) and (a)(2)
Negligence or intentional failure to keep adequate records of tip income which results in the underpayment of tax supports the imposition of the additions to tax under section 6653(a)(1) and (a)(2). . Respondent's determination is presumed correct, *318 and petitioner and Mrs. Kammeyer bear the burden of proving otherwise. ; Rule 142(a). Because we find that petitioner understated his tip income, and that his records failed to reflect accurately his income as required by section 6001, respondent's determination regarding the additions to tax is sustained. b. Section 6661
Section 6661 imposes an addition to tax for a substantial understatement of income tax. An understatement is defined as the excess of the amount of tax required to be shown on the tax return over the amount of tax actually shown on the return as filed less any rebates. A substantial understatement is one that exceeds the greater of either $ 5,000 or 10 percent of the tax required to be shown on the return. In calculating understatements under section 6661, items for which there is substantial authority or with respect to which all relevant facts were adequately disclosed in the tax return, or in a separate statement attached to the tax return, are not to be considered. Sec. 6661(b)(2)(B). Petitioner and Mrs. Kammeyer have not shown that they had substantial authority for underreporting *319 the toke income, nor that they adequately disclosed the relevant facts with respect thereto on their 1983 tax return. Accordingly, respondent's determination of the addition to tax under section 6661(a) is sustained. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the deficiency.↩